
ENTERED
CLERK, U.S. DISTRICT COURT
APR 1 4 2006
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY


FILED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT
APR 1 2 2006
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

✗ Priority
✗ Send
__ Clsd
✗ Enter
__ JS-5/JS-6
__ JS-2/JS-3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DREAMWORKS ANIMATION SKG, INC., SECURITIES LITIGATION | Case File No. CV 05-03966 MRP (VBKx)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT |

## I. Introduction

Lead Plaintiff Nextra Investment Management S.G.R. S.p.A. and additional plaintiffs Elim T. Moy and Charles C. Moy (collectively, "Plaintiffs") bring this action against defendants Dreamworks Animation SKG, Inc. ("Dreamworks"), its Chief Executive Officer, Jeffrey Katzenberg ("Katzenberg"), its Chairman, Roger Enrico ("Enrico"), its Vice President and General Counsel, Katherine Kendrick ("Kendrick"), its Chief Financial Officer, Kristina M. Leslie ("Leslie"), and Director and controlling shareholder, Paul Allen ("Allen")(collectively, the "Defendants"), alleging violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 17 U.S.C. §§77k, 77l and 77o, and separately of Sections 10(b) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. Defendant Dreamworks is a company that develops and produces computer generated animated feature films for release at the box office and in the home video market. In October of 2004, Dreamworks undertook an initial public offering of its Class A common stock (the "IPO"). In November of 2004, just days after the IPO, Dreamworks released the home video version of its feature film *Shrek 2*, which had been a box office success. The DVD went on to become the top selling home video of 2004 and one of the highest selling home videos of all time. Despite its strong performance, however, the *Shrek 2* DVD apparently did not sell as well as anticipated, and in May of 2005 Dreamworks announced that it would miss its earnings estimates for the first quarter of 2005, due in large part to higher than anticipated returns of *Shrek 2*. In July of 2005, Dreamworks announced that it would not meet its revised guidance numbers for the second quarter of 2005, again due primarily to higher than anticipated returns of *Shrek 2*. Each of these announcements was followed by a substantial decrease in the price of Dreamworks stock. The allegations in Plaintiffs' Consolidated Amended Class Action Complaint (the "Amended Complaint"), filed on December 22, 2005, principally relate to various material misstatements and omissions allegedly made by Defendants in connection with the *Shrek 2* home video release.

Defendants filed a Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint on February 3, 2006. The Court heard oral argument from both parties with respect to

Defendants' Motion to Dismiss on April 5, 2006, and the motion was taken under submission.

## II. Standards for Motion to Dismiss

Dismissal for failure to state a claim under Rule 12(b)(6) is appropriate if it "appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *See Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994) (citation omitted). However, the plaintiff bears the burden of pleading sufficient facts to state a claim. *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988). Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Verifone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) (citation omitted).

If the court chooses to dismiss the complaint or a portion thereof, it must then decide whether to grant leave to amend. Generally, leave to amend is denied only if it is clear "that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

## III. Plaintiffs' Claims Under Sections 11, 12(a)(2) and 15 of the Securities Act

Plaintiffs allege (1) violations of Section 11 of the

3

Securities Act by all Defendants, (2) violations of Section 12(a)(2) of the Securities Act by defendants Dreamworks and Allen, and (3) violations of Section 15 of the Securities Act by defendants Katzenberg, Enrico, Kendrick, Leslie and Allen (collectively, the "Individual Defendants"). To state a claim under Section 11, 12(a)(2) or 15 of the Securities Act, a plaintiff must allege, *inter alia*, a misstatement or omission of material fact in an offering document. 15 U.S.C. §§ 77k, 77l(a)(2); *In re Verifone*, 11 F.3d at 868. Here, Plaintiffs point to a number of statements made in the prospectus issued in connection with the IPO (the "Prospectus") relating to the strong box office performance of *Shrek 2*, the historical correlation between box office success and home video success, the historical success on home video of animated films vis-a-vis live action films, and the rapid growth of the home video market since the late 1990's. Although each of these statements was and is literally true, and although the Prospectus contains cautionary language making clear that Dreamworks could not guarantee that such trends would continue, Plaintiffs nevertheless contend that these statements are misleading insofar as they paint a rosy picture of the video market for animated films while failing to disclose a "sea change" in the home video market about which the management of Dreamworks was or should have been aware - namely a shortening of the retail window during which DVDs are purchased by consumers upon their release. According to Plaintiffs, the home video market has evolved in recent years to more closely mirror the performance of films at the box office in that a much higher percentage of total sales are achieved in the first week

after release. In reaction to this trend, Plaintiffs allege that Dreamworks "flooded the market" with copies of the *Shrek 2* DVD, in turn creating the risk that ultimate sales would be affected by a high number of returns from retailers, which in fact happened. It is this risk that Plaintiffs contend was material to investors and should have been disclosed along with the positive market trends highlighted in the Prospectus.

In support of its allegations that this change in the home video market had occurred and was understood by the Defendants such that it should have been disclosed in the Prospectus, Plaintiffs rely on a series of articles published in late 2004 and 2005, mainly in trade publications, that describe this trend in varying degrees of detail. However, upon examination, these articles cited by Plaintiffs do not suggest the existence of a clear trend that would have been well understood at the time of the IPO. Of these articles, only two were published prior to the IPO, one in July of 2004 and the other in September of 2004. In the Amended Complaint, Plaintiffs focus particularly on the September 2004 article, in which an executive of Dreamworks SKG (Dreamworks' parent company prior to the IPO) notes that DVD titles are now garnering more of their total sales in the first week or even the first weekend after release. What Plaintiffs do not point out, however, is that this same article goes on to note that this is mainly a concern for "a smaller title" and that "major theatrical blockbusters like *Shrek 2* and *Spider-Man 2* won't be affected." (Supp. Decl. In Support of Plaintiffs' Motion to Dismiss, Ex. 1). The July 2004 article cited by Plaintiffs, while noting the trend toward a shorter market window for DVDs,

also notes the overall increase in the DVD market. A November 2004 article cited by Plaintiffs for the proposition that Plaintiffs would have known about this trend because *Finding Nemo*, a comparable animated film released on DVD the prior year, sold 57% of its total sales during the first week after release, goes on to point out how successful *Finding Nemo* was both in absolute terms and relative to its own box office performance - thus exemplifying the market trends described by Dreamworks in the Prospectus. The most detailed discussion of this trend cited by Plaintiffs is a May 2005 article in the Wall Street Journal, published more than 6 months after the IPO, that uses *Shrek 2* as its main example of the trend and bears the subtitle "Fast-Changing Market Led Studio to Overestimate Demand for 'Shrek 2.'" (Decl. In Support of Plaintiffs' Motion to Dismiss, Ex. F). This very article notes that "it wasn't unreasonable to have high hopes for "Shrek 2."" *Id*.

As the examples above illustrate, rather than pointing toward the existence of a clear material risk that Defendants knew about and failed to disclose, the handful of articles selectively quoted by Plaintiffs, when reviewed in full, actually describe a fast-changing DVD market in which the trend at issue here was not well understood at the time of the IPO and in which market insiders, including the Defendants, were generally surprised by the lower than expected performance of the *Shrek 2* DVD. "[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart*, 143 F. 3d 1293, 1295 (9th Cir. 1998). As interpreted by the Ninth Circuit, Item 303(a)(3)(ii)

6

of Regulation S-K of the Securities Act requires that an offering document disclose an adverse trend only when that trend is reasonably likely to occur and to have a material impact. *Id.* at 1297. Even taking as true the allegation that Defendants were aware of the trend, the documents cited by Plaintiff in the Amended Complaint undermine the contention that Defendants knew or should have known that this trend would have a material impact on the sales of the *Shrek 2* DVD.

Plaintiffs further argue that Defendants' alleged strategy of "flooding the market" with an excess supply of *Shrek 2* DVDs supports the contention that Defendants were aware of the trend in question and were acting in order to counter it. In *Steckman*, the court specifically rejected allegations of "channel stuffing" - the artificial inflation of sales in one quarter with the knowledge that such sales will subsequently drop while excess supply is depleted - as an indicia of a duty to disclose a known material trend, calling such an allegation "speculation made in hindsight." *Steckman*, 143 F. 3d at 1298. Furthermore, based on information contained in the Amended Complaint itself, the number of units shipped cannot be viewed as excessive. Plaintiffs allege at different points in the Amended Complaint that Dreamworks initially shipped either 25 million or 30 million copies of the *Shrek 2* DVD. According to the Amended Complaint, the *Finding Nemo* DVD, released a year before *Shrek 2*, sold 31.35 million units in the first 90 days after its release. Given that *Shrek 2*, according to Plaintiffs' own sources, had outperformed *Finding Nemo* at the box office, an initial shipment of 25-30

7

million units does not appear inconsistent with the trends and expectations set forth in the Prospectus.

Plaintiffs also allege that Defendants failed to disclose in the Prospectus the important role of return rights granted by Dreamworks to retailers. However, as Defendants point out, the Prospectus states that retailers are granted return rights of up to 100%, provides a detailed explanation of how returns are estimated, and cautions investors that such estimates are subject to ongoing readjustment based on actual sales that could have a material impact on future operating results. Plaintiffs' allegations that these disclosures understated or did not adequately describe the risks that in fact materialized with respect to the high level of *Shrek 2* returns rests on the premise that Defendants knew the effect that the new trends in the home video market would have and failed to disclose them. However, as Plaintiffs' own sources contradict this premise, their claim that Defendants' statements in the Prospectus regarding return rights failed to adequately disclose known risks are merely conclusory.

Plaintiffs make similar claims concerning material misstatements made in the Prospectus with respect to Defendants' revenue recognition policies and internal controls. However, as each of these allegations is also dependent on the proposition that Defendants knew of the trend at issue and knew that it would be material, these allegations are rendered conclusory as well.

Finally, with respect to Plaintiffs' 12(a)(2) claim against defendant Allen, in addition to finding that the claim is unsupported by any material misstatement or omission in the Prospectus, the Court also finds that the claim fails for the

8

reason that Allen is not a "seller" under Section 12(a)(2). A "seller" within the meaning of Section 12(a)(2) is a person that either "(1) passes title to the securities to the plaintiff, or (2) solicits the purchase, motivated in part by financial gain." *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp 2d 1080, 1100 (C.D. Cal. 2003); *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 535 (9th Cir. 1989). Plaintiffs do not make any allegations that Allen is liable under either prong of this test, instead incorrectly asserting that Allen's financial interest in the transaction alone is sufficient to create liability under Section 12(a)(2).

Accordingly, the Court must conclude that the Amended Complaint fails to state a claim under Sections 11, 12(a)(2) and 15 of the Securities Act.

### IV. Plaintiffs' Claims Under Section 10(b) and 20(a) of the Exchange Act

Plaintiffs further allege that all Defendants are liable under section 10(b) of the Exchange Act, and that the Individual Defendants are also liable under Section 20(a) of the Exchange Act, for alleged misstatements and omissions relating to sales and returns of the *Shrek 2* home video made in various press releases, earnings calls and filings with the Securities and Exchange Commission ("SEC") made after the IPO, between December of 2004 and March of 2005. To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, plaintiffs must allege: (1) a misrepresentation or omission of a material fact; (2) scienter; (3) causation; (4) reliance; and (5) damages. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403

F.3d 1050, 1055 (9th Cir. 2005). In addition, plainiffs must satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and the particularity requirements of Rule 9(b). *Id*.

Defendants argue that Plaintiffs have not adequately alleged scienter. To plead scienter under the PSLRA, plaintiffs "must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Se. Litig.*, 183 F. 3d 970, 974 (9th Cir. 1999). A "strong inference" of deliberately reckless conduct requires plaintiffs to plead with particularilty "facts that come close to demonstrating intent" and revealing more than "simple recklessness or a motive to commit fraud and an opportunity to do so." *Id*. Where pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a strong inference of scienter, a Rule 12(b)(6) dismissal is proper. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002). Plaintiffs here attempt to plead scienter by alleging that (1) Defendants had detailed knowledge of actual sales and returns of the *Shrek 2* DVD throughout the relevant period and recklessly reported false sales figures in press releases, earnings calls and SEC filings and (2) Defendants had knowledge of the alleged trend in the DVD market toward a shorter retail window and engaged in an undisclosed strategy of "flooding the market" with *Shrek 2* DVDs in an attempt to counter it.

In support of the first of these two claims, that Defendants had knowledge of actual sales and returns of the *Shrek 2* DVD and recklessly reported false sales figures, Plaintiffs make four

additional allegations. First, they allege that Defendants had access to and closely monitored "a wealth of information" and "constant updates" on *Shrek 2* sales performance. However, Plaintiffs provide no information as to what kind of sales data the Defendants allegedly had access to or when they had it, nor do they make any specific allegations that such information was inconsistent with Defendants' public statements. The only evidence offered in support of this allegation is a general statement by a "confidential witness," an unidentified employee of Blockbuster, Inc., that his supervisor communicated Blockbuster sales data to a representative from Dreamworks on a daily basis and that "everybody...is able to obtain sales figures either in real time or by the next morning and that these figures are communicated to the studios daily." (Am. Comp. at ¶¶124, 125). Without information identifying internal reports of sales data and the contents of those reports, "we cannot ascertain whether there is any basis for the allegations that the officers had actual or constructive knowledge" of the relevant trend "that would cause their optimistic representations to the contrary to be consciously misleading." *Lipton*, 284 F.3d at 1036, *quoting In re Silicon*, 183 F. 3d at 985. Absent particularized information related to the identity and content of the alleged sales reports, this general statement of an unidentified witness does not give rise to a strong inference of scienter.

Second, Plaintiffs argue that Defendants' knowledge of actual sales inconsistent with their public statements is demonstrated by the fact that Dreamworks took "corrective action" to respond to sagging sales by offering discounts to retailers on

11

the *Shrek 2* DVD only 30 days after release. However, the trade publication article that the Plaintiffs cite in the Amended Complaint in support of this proposition notes that 30 day discounts to retailers are increasingly common in the DVD market. The fact that *Shrek 2* was discounted 30 days after release, by itself, does not give rise to a strong inference of scienter.

Third, Plaintiffs allege that a discrepancy between year end sales figures announced on March 17, 2005 (37 million units) and the financial year-end number reported in the 10-K filed on March 28, 2005 (33.7 million units) gives rise to an inference that Plaintiffs were recklessly reporting false sales figures. However, as defendant Leslie, Dreamworks' CFO, explained on both the December 8, 2004 and the March 17, 2005 earnings calls, Dreamworks distinguishes between actual numbers of units sold and units recognized for financial reporting purposes (which allows for a reserve for returned units). The discrepancy highlighted by the Plaintiffs was plainly explained on the March 17 call. Plaintiffs are incorrect when they suggest that scienter can be inferred from this discrepancy.

Fourth, Plaintiffs allege that Defendants' knowledge of actual sales inconsistent with their public statements is demonstrated by their own admission that they receive routine sales information. Plaintiffs point to a statement made on an August 11, 2005 analyst conference call during which a Dreamworks employee stated that Dreamworks does receive sales information, and states that some of this is received on a daily or weekly basis. However, this statement was made well after the relevant period and says nothing in relation to any particular sales data

reviewed by Defendants. Like the comments of Plaintiffs' confidential witness, this kind of statement could be taken as generally true, but does not give rise to a strong inference of scienter as required under the PSLRA.

Plaintiffs also seek to show scienter by pointing toward Plaintiffs' alleged knowledge of trends in the home video market toward a higher percentage of total sales in the initial days and weeks after release, as well as toward its alleged "flood-the market" sales strategy. As discussed above, however, the sources cited in the Amended Complaint do not support of the existence of such a trend or Defendants' awareness of it during the relevant time period. At most, based on these sources, the market trends described by Plaintiffs were only emerging at the time Defendants allegedly made material misstatements, and cannot form the basis of a strong inference of scienter under the PSLRA's heightened pleading requirements.

Finally, the Court finds that the Amended Complaint fails to make any specific scienter allegations with respect to the Individual Defendants. The only scienter allegations against defendants Katzenberg and Enrico, other than general references to Katzenberg's experience in the entertainment field, are allegations of motive and opportunity that do not, on their own, give rise to a strong inference of scienter. *See In Re Silicon*, 183 F.3d at 979. No specific scienter allegations are made with respect to defendants Kendrick and Leslie. With respect to Allen, the only allegations are that he signed the 10-K and had a financial motive to artificially inflate the stock price. These wholly conclusory allegations do not give rise to a strong

13

inference of scienter as required under the PSLRA. *See In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp 2d 1080, 1105 (C.D. Cal. 2003).

### V. Conclusion

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint. Because the Court finds that the sources cited by Plaintiffs in support of their allegations under Sections 11, 12(a)(2) and 15 of the Securities Act in fact contradict the claims made in the Amended Complaint, amendment with respect to these claims would be futile. Accordingly Counts I, II and III are dismissed *with prejudice*. The Court also finds that Plaintiff has failed to meet the heightened pleading requirements of the PSLRA and Rule 9(b) with respect to its claims under Sections 10(b) and 20(a) of the Exchange Act, and accordingly Counts IV and V of the Amended Complaint are dismissed *without prejudice*. Plaintiffs are granted leave to amend the Amended Complaint with respect to Counts IV and V only. The Plaintiffs shall file their amended pleading within sixty days from the date of this order.

IT IS SO ORDERED.

DATED: April 12, 2006

Mariana R. Pfaelzer
United States District Judge